## ROWLAND, ET AL. v. LOGAN.

1. The mere circumstance that one loaning money takes a note payable to a married woman in trust for himself, will not give jurisdiction to a court of equity of a suit by his executor against the debtor and the husband and wife—there being no allegation in the bill that husband or wife interpose any impediments to a recovery at law by suit in their name.

Writ of Error to the Court of Chancery for the thirty-ninth district.

This bill is filed by Logan as the executor of T. A. Powell, (who died in Georgia, and there the letters testamentary were granted,) against Rowland and one Hague and his wife Mildred. The case made by it is this:

On the 26th Dec'r, 1840, Powell loaned Rowland $2500, for which the latter executed his note to Mildred Hague, who then was the wife of John Hague. The note was delivered to Mrs. Hague in trust for Powell, was his property, and so acknowledged and received by Mrs. Hague. It was afterwards delivered to Powell by Mrs. Hague, and was in his possession at his death, which took place in 1842, he being then a resident in the State of Georgia. Rowland, under various pretences, declines to pay the sum due by the note to the complainant. The prayer is that Rowland may be decreed to pay the complainant, and that Hague and wife may be injoined from asserting any further claim, &c.

Rowland, by his answer, admits the execution of the note to Mrs. Hague in October, 1840, for $2500, for so much money received of her by him for safe keeping. When he received it he thought it was hers, and that it was to be put at interest for her, as her husband was poor, imbecile, &c. and unable as well as unfit to manage for her. That if the money was not hers, it was put in his hands to defraud the creditors of Thomas Powell or of Richard Powell, the latter of whom was greatly in debt and probably insolvent. That he understood at the time, the money was to be put at interest

for Mrs. Hague's benefit, she then residing with him. He remained under this impression until a short time before Powell's death, when he was informed by letter from Powell that the note had been transferred or delivered to him, and also requested to answer if he was ready or willing to pay it. He afterwards saw Powell and paid him $1520, and took his receipt. This sum was paid in a settlement of matters between them. Powell then said he had not the note with him, but had left it at Rowland's house with Mrs. Hague. This receipt was kept by Rowland until after the death of Powell, when he was called on by the complainant to pay the note. He showed the receipt, and proposed to pay the balance after deducting the amount which the complainant refused to accept, though he admitted the receipt was good, and asked the privilege to take a copy. Since then, Rowland has never seen the receipt, though he has seen the paper which the complainant calls a copy, but which is untrue in the date, that being after the date of Powell's letter to him, and not before, as the pretended copy purports. He submits that he is willing to pay the balance to the person properly entitled to receive it, but demurs to the bill for several reasons, amongst which may be stated—

1. That if the facts be truly stated, the complainant has adequate relief at law.

2. Because there is no charge that Jesse or Mildred Hague assert a claim to the note.

3. Because the bill does not negative the fact of an administration in Alabama. The answer of Mrs. Hague admits the facts substantially as charged in the bill, and a decree *pro confesso* is taken as to her husband.

The evidence in the cause principally consists, on the part of the defendant, in an attempt to prove the payment asserted by his answer, and is the testimony of one witness, who says he heard a conversation between Powell and Rowland in the fall of 1842, a short time before the death of Powell, at the house of Rowland in Alabama, in which the former asserted, and the latter admitted, the payment of $1520 on the note in controversy, and that a receipt had been given because the note was not present to be credited. The proof on the part of the complainant was the testimony of Mrs. Hague sustain-

ing the facts of the bill—a letter of Rowland under date of 19th May, 1842, admitting the debt—the testimony of several witnesses showing the extreme improbability that Powell was ever in Alabama after May, 1842, being afflicted with disease, and having died in August of that year—and Mrs. Hague's testimony that she was living in the family of Rowland until after the death of Powell, her brother, and that he was not there after March, 1842.

The chancellor overruled the demurrer—decreed that Rowland should pay the money—and that Hague and wife should assert no title, &c.

This decree is assigned as error.

Rice, for the plaintiff in error, insisted—

1. That the plaintiff's remedy was clear at law by suing on the note in the name of Hague and wife. The circumstance that it was knowingly given to a *feme covert* in trust furnishes no ground for jurisdiction. [Pond v. Lockwood, 8 Ala. Rep. 676; Porter v. Spencer, 2 Johns. Ch. 171; Standifer v. McWhorter, 1 Stewt. 532; Halstead v. Rabb, 8 Por. 63; Hitchcock v. Lukens, 8 Por. 333; Grigsby v. Nance, 3 Ala. Rep. 347; Booth v. Morris, 8 Ib. 907; Bird v. Daniel, 5 Ib. 302; Jones v. Stewart, Ib. 855; Weir v. Buford, 8 Ib. 134.]

2. Nothing is stated in the bill which ousts the court of law of jurisdiction. [Hardeman v. Simms, 3 Ala. Rep. 747; Sadler v. Robinson, 2 Stewt. 520.]

3. One witness speaking positively to the admission of payment, should outweigh any number whose testimony is negative.

Parsons and Chilton, contra, insisted—

1. That the proof shows the existence of an express trust, and therefore it is a subject of equity jurisdiction. [2 Sto. Eq. 307; Comyn's Dig. Chan. 2, A; May v. Nabors, 6 Ala. Rep. 24.]

2. But the remedy of the plaintiff did not exist at law; he could not sue in the name of the *feme covert*, and cannot be required to use that of the husband. He might control the

Rowland, et al. v. Logan.

suit, or his circumstances might affect it. [1 Story's Eq. 440.]

3. But even if the equity be defectively stated in the bill, the answers admit it, and disclose—1. That an account should be taken in the matters asserted to be settled between the defendant and Powell—2. That a discovery is necessary, and the evidence of Mrs. Hague essential to a recovery, and this could not be obtained at law, as she would be a party— 3. That the defendant, Rowland, repudiates the trust created for Powell, and asserts title in Hague. [Elliot v. Boaz, 9 Ala. Rep. 772; Maury v. Lewis, 10 Yerg. 115; Rose v. Mynatt, 7 Yerg. 30; McLaughlin v. Daniel, 8 Dana, 184.]

4. When the remedy at law is doubtful or obscure, equity will take jurisdiction. [Weymouth v. Boyer, 1 Vesey, 416; Am. Ins. Co. v. Fisk, 2 Paige, 509; Teague v. Russel, 2 Stewt. 420.] So also when the remedy is defective. [Seymore v. Delancy, 3 Cowen, 445; Kendrick v. Dullum, 1 Tenn. 489; Drew v. Clark, Cook, 334; Lathrop v. Bennett, Kirby, 185.]. The remedy at law must be plain, as well as adequate to oust a court of equity. [1 Kent, 207, 317, 499, 467, 364; Andrews v. Solomon, 1 Peters' C. C. 356; 5 Conn. 86; Walls v. Hunn, 4 Litt. 267; Pitkin v. Pitkin, 7 Conn. 315; 1 S. & P. 138; 2 Caine's Ca. 1; 4 Johns. Cas. 287; 2 Swanst. 63.]

5. The bill may also be sustained on the ground to prevent multiplicity of suits, and to settle the rights between all the parties. [Story's Com. § 457; Mitford, 119; 6 Ves. 688; 4 Madd. 374; 2 Ala. Rep. 609; 3 Mum. 570; 3 Johns. 566.]

6. So also on the ground that the discovery is made by the answer of facts on which the complainant's relief depends. [Pryor v. Adams, 1 Call, 382; Avery v. Holland, 2 Tenn. 77; Duval v. Ross, 2 Mumf. 290; Bass v. Bass, 4 H. & M. 478; Emerson v. Slater, 3 Mon. 117; Rees v. Parish, 1 McCord Ch. 89.]

7. On the merits the case stands without aid, as the defence is not established, but on the contrary is disproven.

GOLDTHWAITE, J.—This cause, on the question of jurisdiction, seems quite clear against the complainant. The

mere circumstance that a trust has been created, does not invest courts of equity with jurisdiction over suits in relation to the trust property. It is only when the dispute is with reference to the administration of the trust as between the *cestui que trust* and trustee, or those in collusion with him, that the courts of law are evoked. [9 Ala. Rep. 351.] It is not asserted or pretended by the will that either Mrs. or Mr. Hague interpose any impediment in the use, by the *cestui que trust*, of their names, in a suit at law, and if there was a refusal on their part, it admits of doubt whether even a court of law would not protect the beneficial interest of the complainant; but without intending now to consider this point, we think it clear a suit at law could have been maintained either in the name of Hague alone or with his wife, for the recovery of the money, and that entirely independent of the endorsement by Mrs. Hague, and on the supposition that no interest passed by it. [Arnold v. Revault, 1 B. & B. 443; 4 Term, 616; Chitty on Bills, 26.] These authorities are satisfactory to the point, that there was neither doubt or difficulty in sustaining an action at law on the note, in the name of the husband alone, or joining with his wife; and it is not clear but that the complainant might have sued in his own name, either on the indorsement of Mrs. Hague or in connexion with the subsequent promise. Thus, in Carter v. Davis, 1 Campbell, 485, a suit by the *indorsee* of a married wsman was maintained on the ground that the defendant was estopped by his promise to pay the indorsee from contesting the authority of the wife to make the indorsement. And in Proutwick v. Marshall, 4 C. &P. 495, the indorsement of a bill by a *feme covert* in her own name, was held to pass the legal interest, her husband's assent being shown. Whether the assent of the husband to the indorsement by his wife, under the circumstances of the case, might not be fairly inferred, especially after the maker's promise to pay the assignee, is a matter which we need not decide.

Taking the case either as alleged by the bill, or made out in proof, we think it is not one in which the complainant is

remediless at law, or that such difficulty or doubt exists in the legal remedy as to warrant the interposition of chancery, on either of these grounds. As this conclusion disposes of the case, we need not express an opinion on the proofs.

Decree reversed, and here rendered dismissing the bill without prejudice.