## KING vs. KING.

[BILL IN EQUITY FOR DIVORCE ON GROUND OF CRUEL TREATMENT.]

1. *Motion to suppress depositions for defects in commissioner's return.*—A commissioner, appointed to take the deposition of a witness in a chancery cause, has power to administer the necessary oath, and to make a return to the court under whose authority he acts; and where his return embraces the commission, the interrogatories, the caption of the answers, and the certificate, all these together must be looked to in determining whether he performed his duty. A defect in one part of the return, when supplied in another part, is no ground for suppressing the deposition. If the return states that

the deposition was taken pursuant to the commission, it is not essential that it should also state the manner of pursuing the commission. If it states that the witness was "sworn and examined" by the commissioner, "by virtue of a commission" issued out of the court to which the return is made; and the commission and interrogatories returned specify the particular case; and the deposition shows that the witness, at the time he was answering the interrogatories, knew that he was testifying in that particular case,—the presumption is, that the commissioner swore the witness by virtue of that commission, and in the case therein specified.

2. *Confessions of parties admissible but not sufficient evidence.*—Under section 1966 of the Code, by which it is enacted that, in suits for divorce, "no decree can be rendered on the confessions of the parties", the confessions of the parties are not rendered inadmissible, but are only declared insufficient, when they constitute the only evidence of the alleged cause of divorce: a decree may be rendered on such confessions, in connection with proof of conduct and circumstances which tend to confirm them, and to repel the idea of collusion between the parties.

3. *When cruelty of husband, though not without provocation, is ground of divorce.*— Irritability of temper on the part of the husband, producing ungovernable passion, and occasionally ending in acts of personal violence, renders cohabitation unsafe, and is a peril from which the wife is entitled to protection, although she may not have been wholly blameless. When the passions of the husband are shown to be so much beyond his own control, that it is inconsistent with the personal safety of the wife to continue in his society, it is immaterial from what provocation such violence may have originated.

4. *Alimony, amount of.*—Where a divorce is granted to the wife on the ground of cruelty, a sum of money equal to the legal interest on one-third of the value of the husband's real estate, together with a gross sum equal to one-fifth of his personal estate, is not an unreasonable amount for her alimony; there being no children of the marriage to be provided for, and the husband's children by a former marriage having already received advancements.

APPEAL from the Chancery Court of Macon.

Heard before the Hon. A. J. WALKER.

This bill was filed by Mrs. Margaret King, suing by her next friend, to obtain a divorce from her husband, William King, who is the present appellant, on the ground of cruel and inhuman treatment. The parties were married in 1834, and the bill was filed in 1854. There were no children born of the marriage, but the defendant had several children by a former marriage living with him. In his answer to the bill, the defendant denied the alleged acts of violence on his part, and alleged that the complainant's own misconduct and violent temper produced all their family difficulties, that she compelled him to send his children away from home, that she

allowed him to have no peace or comfort, refused to treat
him with common civility, called him by abusive names, &c.

The evidence set out in the record is very voluminous, but
a statement of it in detail is unnecessary. Many exceptions
were taken to the rulings of the chancellor on the evidence,
in receiving the confessions and declarations of the party,
and in refusing to suppress depositions on account of defects
in the commissioner's returns; but these matters require no
particular notice. On final hearing, on pleadings and proof,
the chancellor granted the prayer of the bill; and, in decree-
ing alimony to the complainant, declared that she was enti-
tled to an amount equivalent to her dower interest and dis-
tributive share under the statute, as if she had survived her
husband; and he therefore allowed her, out of the defendant's
estate, "a sum of money equal to the legal interest on one-
third of the value of the defendant's real estate, as it existed
at the commencement of the suit, together with a sum of money
equal to one-fifth of his personal estate, choses in action, and
money held by or belonging to him." The decree of the
chancellor is now assigned for error, together with his rulings
on the defendant's exceptions to the complainant's testimony.

CLOPTON & LIGON, for the appellant.

JAS. E. BELSER and GEO. W. GUNN, *contra.*

RICE, J.—We have carefully examined each of the forty-
three exceptions, which were taken by the appellant, in the
court below, to the testimony offered and relied on by the
appellee; and, in arriving at our conclusions upon the issues
presented by the pleadings, we have allowed to him all the
benefit to which those exceptions entitle him. A notice in
detail of them is useless; it is enough for us to state the rules
which apply to them, and by which we have been governed
in disposing of them.

The rules which govern the taking of depositions in chan-
cery causes, commenced since the Code went into effect, are
not in all respects the same as those which govern the taking
of depositions in cases at common law. Section 2920 of the
Code provides, that testimony in chancery causes must be
taken by *interrogatories,* under *the rules* now in force, or such
as may hereafter be adopted.

A commissioner, appointed to take the answers of a witness to interrogatories, in a chancery cause, is invested with power to administer the necessary oath, and to make a return to the court from which he derived his appointment, and under whose authority he acts. When the return embraces the commission, the interrogatories, the caption of the answers, and the certificate, all these together must be looked at in determining whether the commissioner has substantially performed his duty. The caption is as much a part of the return as is the certificate. The return is, *prima facie*, entitled to full faith and credit; and if it shows, by a direct statement, or otherwise, that the deposition was taken pursuant to the commission, and the commission is unobjectionable, and not objected to, the court should, in the absence of proof *aliunde*, overrule any motion to suppress, founded merely on a defect in one part of the return, which is supplied in some other part of the return.—Comstock v. Meek, 7 Ala. R. 528; Olds v. Powell, 7 *ib.* 652; Potier v. Barclay, 15 *ib.* 439; Ulmer v. Anstill, 9 Porter, 157; Glover v. Millings, 2 Stew. & Por. 28. Thus, a defect in the certificate, which is supplied in the caption, is no ground for suppressing a deposition in a chancery cause.

If the return states that the deposition was taken pursuant to the commission, it is not essential that it should also state *the manner* of pursuing the commission. If it states that the witness was "sworn and examined" by the commissioner, "by virtue of a commission" issued out of the chancery court of Macon county; and such a commission, with the interrogatories and answers, is returned to that court; and the commission and interrogatories specify the particular case in which they were put forth; and the deposition shows that the witness knew, at the time he was answering the interrogatories, that he was testifying in that particular case,—the presumption is, that the commissioner swore the witness, by virtue of that commission, and in the case therein specified.— Olds v. Powell, and other cases, *supra.*

The cases of Richardson v. Richardson, 4 Porter, 467, and Moyler v. Moyler, 11 Ala. Rep. 624, were decided under the influence of the 4th section of the act of 1824, in relation to the confessions of the parties in suits for divorces, which was

in the following words : " In order to prevent collusion between the parties, in no case shall the confession of them, or either of them, *be taken or received as evidence*, in any case of divorce."—Clay's Dig. 171, § 16.

But the Code repealed that section, and substituted for it, in section 1966, the following provision : " No decree can be rendered on the confession of the parties, or either of them."

The distinction between the *admissibility* and the *sufficiency* of evidence is well known; and that is the very distinction taken and maintained in the provision of the Code above quoted. The act of 1824 made the confessions *inadmissible* as evidence. The Code makes them *insufficient*, but does not absolutely exclude them. It makes them *admissible*, but forbids the rendition of a decree for divorce, when they constitute the only evidence of the alleged cause for divorce. It does not, however, forbid the rendition of such decree when they do not constitute the only evidence, but are proved in conjunction with other circumstances and conduct, which confirm or tend to confirm them, and repel the idea of collusion between the parties. A decree for divorce, rendered on confessions, *and conduct, and circumstances,* is not a decree " rendered on the confession of the parties", within the meaning of the Code.—Shelford on Marriage and Divorce, 411; Mortimer v. Mortimer, 2 Hagg. Cons. R. 316; Williams v. Williams, 1 *ib.* 304; Harris v. Harris, 2 Hagg. Eccl. R. 376; Morgan v. The State, 11 Ala. R. 289; Bell v. Rhea, 1 *ib.* 83.

The provision of the Code above quoted, was designed to guard against collusion between the husband and the wife. Whilst, therefore, it allows their confessions to be received, it denies *credit* to them, whenever they are unsupported. It is, in substance, the adoption of the 105th of the ecclesiastical canons of 1603, " that in all proceedings in divorce and nullities of matrimony, good circumspection and advice be used, and that the truth may (as far as possible) be sifted out by the deposition of witnesses, and other lawful proofs and evictions, and that *credit* be not given to *the sole confession* of the parties themselves, either within or without the court."—Shelford on Mar. and Divorce, 411, and note (i).

Disregarding all the evidence the consideration of which is not justified by the views and rules above expressed, there

is sufficient testimony, of unexceptionable character, to entitle the wife to the protection of the law, and to the decree rendered in her favor by the chancellor. The main features of the alleged cruelty are, irritability of temper, producing ungovernable passion, ending occasionally in acts of personal violence, and of course attended with the danger of a repetition of personal mischief. The wife is not without blame; but enough is not proved to justify the ferocity of the husband. The decree for divorce is fully sustained by the following authorities: Holden v. Holden, 1 Hagg. Cons. R. 453; Westmeath v. Westmeath, 2 Hagg. Eccl. R. Suppl. 73, 238; Shelf. on Mar. and Divorce, 429 to 435; Hughes v. Hughes, 19 Ala. R. 307; David v. David, 27 *ib*. 222.

The ground upon which a divorce was denied to the wife in David v. David, *supra*, was, that she, by her own misconduct, had brought upon herself the ill treatment of which she complained; and that it was not wholly out of proportion to her offence, nor without excuse, when considered with reference to the provocation. But, in the present case, the failings of the wife have been inordinately resented, and visited with intemperate violence and inexcusable harshness. When the passions of the husband are thus shown to be so much out of his own control, that it is inconsistent with the personal safety of the wife to continue in his society, it is immaterial from what provocation such violence originated. Such a tendency to bodily mischief renders cohabitation unsafe, and is a peril from which the wife is entitled to protection.

The allowance made to the wife by the chancellor, on granting her a divorce, is justified by the evidence, under the provisions of our law.—Code, §§ 1971, 1972.

On this appeal, we shall not decide again the matters which were decided in awarding the *mandamus* to Chancellor Clark on the application of the appellee at the last term. We allude to the decision made on that application merely to state that the matters embraced by it are distinct, and must be kept distinct, from the matters embraced by this appeal.

The decree of Chancellor Walker, granting the divorce to the appellee, and determining her allowance under the provisions of sections 1971 and 1972 of the Code, is in all things affirmed, at the costs of the appellant.